1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                     FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   RELMON H. DAVIS, III,                    Case No.   1:20-cv-01270-KES-HBK (HC)
12                    Petitioner,             FINDINGS AND RECOMMENDATIONS TO
                                              DENY PETITION FOR WRIT OF HABEAS
13          v.                                CORPUS AND DECLINE TO ISSUE
                                              CERTIFICATE OF APPEALABILITY [1]
14   W.J. SULLIVAN,
                                              FOURTEEN-DAY OBJECTION PERIOD
15                    Respondent.
16
17

18   **I.      STATUS**

19          Petitioner Relmon H. Davis, III ("Petitioner" or "Davis"), a state prisoner, is proceeding

20   pro se on his Petition for Writ of Habeas Corpus filed under 28 U. S.C. § 2254 on September 8,

21   2020.  (Doc. No. 1, "Petition").  Petitioner challenges his conviction following a jury trial for one

22   count of being an inmate in possession of a weapon in violation of Penal Code § 4502(a) with

23   additional findings that he had two prior strike convictions and served two prior prison terms for

24   felony convictions.  (Case No. 15CMS-7004).  (Doc. No. 17-14 at 2; *see* Doc. No. 17-1 at 159,

25   Doc. No. 17-2 at 66-69).[2]  The Kings County Superior Court sentenced Petitioner to an

26   ─────────────
     [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

27
     [2] All citations to the pleadings and record are to the page number as it appears on the Case Management
28   and Electronic Case Filing ("CM/ECF") system.

                                                1

1    indeterminate term of twenty-seven (27) years to life.[3]  (Doc. No. 17-14 at 2; *see* Doc. No. 17-2 at

2    117-18).  The Fifth Appellate District Court affirmed Petitioner's conviction on appeal.  (Case

3    No. F075017).  (Doc. No. 17-14 at 2).  On June 12, 2019, the California Supreme Court

4    summarily denied review.  (Case No. S255539).  (Doc. No. 17-15 at 1).

5            Petitioner filed multiple petitions for writ of habeas corpus in the state courts during the

6    pendency of his criminal proceedings and after his conviction and appeal.  (*See generally*, Doc.

7    Nos. 17-16 through 17-22).  However, the state courts denied relief (Doc. Nos. 17-16 at 1; 17-17

8    at 1; 17-18 at 1; 17-19 at 1-2; 17-20 at 1-2; 17-21 at 1; 17-22 at 1).

9            The Petition pending before the Court contains the following (restated)[4] grounds for relief:

10    (1)  Petitioner was denied due process and equal protection when he was
         denied additional time and not granted funds to prepare a defense after
11       requesting to represent himself at trial.

12    (2)  The trial judge displayed judicial bias by improperly excluding Petitioner's evidence
         related to his prior convictions and prison priors.

13
      (3)  The prosecution offered "false" evidence to establish Petitioner's prior convictions.
14
      (4)  Petitioner was not informed of the name of the inmate who reported the weapon, in
15       violation of Petitioner's right to confrontation.

16    (5)  The trial court denied Petitioner's motions without review and without explanation.

17    (6)  The prosecution improperly used a peremptory challenge to exclude a black, female
         prospective juror.
18
      (7)  Petitioner was denied the right to an open and public trial when the courtroom was
19       closed on October 12 and 13, 2016.

20    (8)  Petitioner received ineffective assistance of counsel when his appointed pretrial
         counsel refused to review documents presented by Petitioner and investigate the
21       alleged prior offenses.

22    (9)  The false evidence related to the prior offenses was improperly admitted as character
         evidence and to show offense count.
23
      (10) One of the prison priors was unsupported because the record of the underlying case
24        was incomplete.

25    _____

26    [3] The sentence was based on the term of 25 years to life for the inmate in possession of a weapon
      conviction, plus two consecutive one-year terms for the prior prison term enhancements.

27    [4] The Petition is far from clear in setting forth the grounds for relief.  The undersigned has made every
28    effort to ascertain the claims based on the limited information provided.

                                            2

1  (Doc. No. 1 at 6-20).

2          Respondent filed an Answer (Doc. No. 18), arguing Petitioner was not entitled to relief on

3  any of his grounds, and lodged the state court record in support (Doc. 17, 17-1 through 17-22).

4  Petitioner filed a traverse.  (Doc. 19).  This matter is deemed submitted on the record before the

5  Court.  After careful review of the record and applicable law, the undersigned recommends the

6  district court deny the Petition and decline to issue a certificate of appealability.

7      **II.      GOVERNING LEGAL PRINCIPLES**

8          **A.      Evidentiary Hearing**

9          In deciding whether to grant an evidentiary hearing, a federal court must consider whether

10  such a hearing could enable an applicant to prove the petition's factual allegations, which, if true,

11  would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474

12  (2007).  "It follows that if the record refutes the applicant's factual allegations or otherwise

13  precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.  Here,

14  Petitioner did not request an evidentiary hearing, and this Court independently finds that the

15  pertinent facts of this case are fully developed in the record before the Court.  Thus, no

16  evidentiary hearing is required.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).

17          **B.      ADEPA General Principles**

18          A federal court's statutory authority to issue habeas corpus relief for persons in state

19  custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

20  Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to

21  first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If

22  the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard

23  of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on

24  the merits, then AEDPA mandates a deferential, rather than *de novo*, review.  *Kernan v. Hinojosa*,

25  136 S. Ct. 1603, 1604 (2016).  This deferential standard, set forth in § 2254(d), permits relief on a

26  claim adjudicated on the merits, but only if the adjudication:

27                    (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
28                    determined by the Supreme Court of the United States; or

3

1

2
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3    28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy.

4    *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

5         "Clearly established federal law" consists of the governing legal principles in the

6    decisions of the United States Supreme Court when the state court issued its decision.  *White*, 572

7    U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an

8    unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary

9    to" clearly established federal law if the state court either: (1) applied a rule that contradicts the

10   governing law set forth by Supreme Court case law; or (2) reached a different result from the

11   Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S.

12   12, 16 (2003).

13        A state court decision involves an "unreasonable application" of the Supreme Court's

14   precedents if the state court correctly identifies the governing legal principle, but applies it to the

15   facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S.

16   133, 134 (2005), or "if the state court either unreasonably extends a legal principle from

17   [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

18   extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362,

19   407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas

20   relief so long as fair-minded jurists could disagree on the correctness of the state court's

21   decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The petitioner must show that the

22   state court decision "was so lacking in justification that there was an error well understood and

23   comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

24        When reviewing a claim under § 2254(d), any "determination of a factual issue made by a

25   State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting

26   the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt*

27   *v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable

28

4

1    merely because the federal habeas court would have reached a different conclusion in the first

2    instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

3         Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any

4    constitutional error had a "substantial and injurious effect or influence" on the verdict.  *Brecht v.*

5    *Abrahamson*, 507 U.S. 619, 637 (1993).  As the Supreme Court explained, while the passage of

6    AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht's* actual-

7    prejudice requirement.  *Brown v. Davenport*, 596 U.S. 118, 134 (2022).  In other words, a habeas

8    petitioner must satisfy *Brecht*, even if AEDPA applies.  *See id.* at 138 ("[O]ur equitable

9    precedents remain applicable 'whether or not' AEDPA applies.") (*citing Fry v. Pliler*, 551 U.S.

10    112, 121 (2007)).  In short, a "federal court must deny relief to a state habeas petitioner who fails

11    to satisfy either [*Brecht*] or AEDPA.  But to grant relief, a court must find that the petition has

12    cleared both tests."  *Id.* at 134.

13         As discussed *supra*, for the deferential § 2254(d) standard to apply there must have been

14    an "adjudication on the merits" in state court.  An adjudication on the merits does not require that

15    there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S.

16    at 98.  "When a federal claim has been presented to a state court and the state court has denied

17    relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

18    of any indication or state-law procedural principles to the contrary."  *Id.* at 99.  "The presumption

19    may be overcome when there is reason to think some other explanation for the state court's

20    decision is more likely."  *Id.* at 99-100.  This presumption applies whether the state court fails to

21    discuss all the claims or discusses some claims but not others.  *Johnson v. Williams*, 568 U.S.

22    289, 293, 298-301 (2013).

23         While such a decision is an "adjudication on the merits," the federal habeas court must

24    still determine the state court's reasons for its decision in order to apply the deferential standard.

25    When the relevant state-court decision on the merits is not accompanied by its reasons,

26         the federal court should "look through" the unexplained decision to
27    the last related state-court decision that does provide a relevant
    rationale. It should then presume that the unexplained decision
    adopted the same reasoning.  But the State may rebut the
28    presumption by showing that the unexplained affirmance relied or

1
2
3

> most likely did rely on different grounds than the lower state court's
> decision, such as alternative grounds for affirmance that were
> briefed or argued to the state supreme court or obvious in the record
> it reviewed.

4   *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state

5   court decision "for a specific and narrow purpose—to identify the grounds for the higher court's

6   decision, as AEDPA directs us to do." *Id.* at 1196.

7
8
9
10
11

> When . . . there is no reasoned state-court decision on the merits,
> the federal court "must determine what arguments or theories . . .
> could have supported the state court's decision; and then it must ask
> whether it is possible fairminded jurists could disagree that those
> arguments or theories are inconsistent with the holding in a prior
> decision of this Court." *Richter*, 562 U.S. at 102.  If such
> disagreement is possible, then the petitioner's claim must be denied.
> *Ibid.*

12   *Sexton*, 138 S. Ct. at 2558.

13   **III.    RELEVANT FACTUAL BACKGROUND**

14          The Court adopts the pertinent facts of the underlying offenses, as summarized by the

15   California Fifth District Court of Appeal.  A presumption of correctness applies to these facts.

16   *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

17          ***Relevant Facts***

18
19
20

> On September 3, 2014, appellant was an inmate at Corcoran State
> Prison. Correctional officers received information from other
> inmates that appellant was suspected of possessing a weapon in his
> cell. The correctional officers approached appellant's cell,
> instructed him to exit, and performed a search.

21
22
23
24
25
26

> The officers came upon a small box on the cell's top bunk and
> looked inside. The box contained a seven-and-a-half-inch-long
> weapon. The weapon consisted of multiple razor blades attached to
> a piece of wood by copper wire, with a handle wrapped in cloth.
> The correctional officer took possession of the weapon and logged
> it into evidence. At trial, the correctional officer explained the
> weapon was commonly referred to as a tomahawk and was intended
> for slicing, rather than stabbing, a victim. The weapon itself and
> pictures of it were admitted into evidence. Further, prior to the
> incident, appellant had been the sole occupant of the cell for
> approximately two weeks.

27   (Doc. No. 17-14 at 2).

28   ////

6

1    **IV.    ANALYSIS**

2        **A.    Standard of Review**

3        As an initial matter, the undersigned must determine the appropriate standard of review

4    for Petitioner's claims.  Petitioner represents that each of his claims were presented to the state

5    courts and are therefore exhausted, citing his multiple state habeas petitions.  (Doc. 1 at 6-21).

6    Respondent makes a general statement that "[c]laims barred for lack of fair presentation in state

7    court, are barred here," but only vaguely asserts that a single claim—"that the prosecution knew

8    prior convictions were false"—was not presented to the California Supreme Court such that it is

9    unexhausted.  (Doc. 18 at 2, 10).  (Doc. 18 at 2).  For the majority of Petitioner's claims,

10   Respondent wholly fails to identify the relevant state court decision the Court should look to in

11   conducting its federal habeas analysis.  (*See id.* at 5-10).  Unsurprising considering Respondent's

12   failure to adequately address the issues, Petitioner's traverse does not address (1) the controlling

13   state court opinion for each claim or (2) exhaustion.  (*See* Doc. 19).

14       Here, the only claim Petitioner raised on direct appeal was that "the trial court erred by

15   informing the jury of his prior criminal acts, thereby denying him a right to an impartial jury."

16   (*See* Doc. No. 17-14 at 2).  He does not raise a similar ground in the Petition, such that the state

17   appellate court's detailed decision does not provide guidance on Petitioner's current claims.

18   Rather, the grounds raised in the Petition were brought before the state courts in Petitioner's

19   various habeas filings.  (*See* Doc. Nos. 17-20 through 17-22).  Because both the Fifth District and

20   the California Supreme Court summarily denied review on Petitioner's subsequent state habeas

21   petitions raising the same issues (*see* Doc. Nos. 17-21 at 1, 17-22 at 1), the trial court's ruling is

22   the only decision providing *any* explanation for the denial of habeas relief.  (*See* Doc. No. 17-20

23   at 1-2).  The trial court denied relief because Petitioner failed to set forth specific facts to support

24   his ineffective assistance claim; Petitioner's claims about the admission and use of his prior

25   convictions were denied on the merits on direct appeal; and Petitioner failed to "set forth reasons

26   constituting a sufficient excuse for his failure to raise [his remaining claims] on direct appeal."

27   (*Id.* at 2).  It is unclear from the language of the order whether the court denied the claims as

28   factually deficient, procedurally barred, or meritless, or some combination of these reasons.

Because there is no clear substantive decision from the state courts on Petitioner's claims and because it is unclear whether all of Petitioner's claims are exhausted, the undersigned applies *de novo* review. Such is appropriate as "[c]ourts can … deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). Similarly, even an unexhausted claim can be denied when it is meritless. *See* 28 U.S.C. § 2254(b)(2). As discussed below, each of Petitioner's claims are meritless even under *de novo* review such that he is not entitled to federal habeas relief.

**B.      Ground One – Denial of Continuance**

In his first ground, Petitioner alleges that after being allowed to represent himself at trial, he was "not given the time to prepare a defense or the funds to self represent." (Doc. No. 1 at 6).

**1.  Background**

On September 9, 2016, at a trial confirmation hearing, Petitioner informed the trial court that he wished to represent himself at trial. (Doc. 17-5 at 100). Petitioner indicated his decision had "nothing to do with [counsel's] effectiveness, it has to do with the direction of the tactic" because he would be able to best bring out the issues he wished to present. (*Id.* at 101-02). The court informed Petitioner that trial was scheduled for the following Monday and asked if Petitioner would be able to proceed as scheduled and Petitioner indicated he would. (*Id.* at 104-05). While advising Petitioner of his rights, the court again asked if Petitioner understood that the court would not grant a continuance and the case would proceed to trial on Monday, and Petitioner answered in the affirmative. (*Id.* at 107). After finding Petitioner mentally capable of representing himself, the court again asked Petitioner if he was "ready for trial on Monday," and Petitioner again responded affirmatively. (*Id.* at 110).

During subsequent discussion, Petitioner's now-relieved counsel, Melina Benninghoff, informed the court that Petitioner was claiming he gave her a copy of "two 115's"[5] and Petitioner

---

[5] This appears to be a reference to a disciplinary form used by the California Department of Corrections to report rules violations. *See* 15 Cal. Code Regs. § 3313.

explained that the 115's he had were "blacked out, and … recopied or rewritten copy of a later date" and he would like the originals to present as evidence. (*Id.* at 113).  After Benninghoff indicated she did not have a copy of the referenced documents, Petitioner asked "[i]f this would validate a continuance of about two days, maybe a day, maybe until next Friday" because he needed the copy. (*Id.* at 115).  The court responded that the 115 was not significant but Petitioner could "certainly file a motion to continue," and gave the Petitioner a chance to explain the significance of the 115. (*Id.*).  Petitioner indicated the "115 would show the officer's actual intent, or … non authorization" because he did not comply with the proper procedures in completing and filing the form. (*Id.* at 115-17).  The court explained the only portion of the 115 that would be relevant at trial would be the narrative explaining where the weapon was found and the issues of "who prepared the 115, who filed the 115, who certified the 115, and who filed it for a DA referral" were not relevant because the issue was whether there was a weapon in Petitioner's cell and whether he had knowledge of it. (*Id.* at 118-19).  Thus, the court declined to grant a continuance.  Trial commenced the following Monday, September 12, 2016. (*See id.* at 127).

**2.  Analysis**

Petitioner alleges the denial of a continuance violated his right to due process because it left him without a defense. (Doc. No. 1 at 7).

> The denial of a request for a continuance may, under unusual circumstances, result in a denial of due process. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). But "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Id.*; *see also Morris*, 461 U.S at 11, 103 S.Ct. 1610. For that reason, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589, 84 S.Ct. 841.

*Michaels v. Davis*, 51 F.4th 904, 943-44 (9th Cir. 2022).

Here, there is no indication that the denial of the continuance amounted to a violation of due process.  Petitioner did not request to represent himself until four days before trial and the

1    trial court confirmed three separate times that Petitioner understood trial would go forward as

2    scheduled.  Further, when Petitioner asked for a continuance, the trial court allowed him an

3    opportunity to explain why a continuance was now necessary despite Petitioner's earlier

4    assurances he would be ready to proceed.  The court only denied the continuance after Petitioner

5    explained the request was to obtain the 115s because such were not relevant to Petitioner's case.

6        Further, even if the denial did violate Petitioner's right to due process, he "is unable to

7    show that the lack of a continuance had a substantial and injurious effect or influence in

8    determining the jury's verdict" as required by *Brecht*.  *Ibarra v. Ryan*, 312 F. App'x 42, 44 (9th

9    Cir. 2009) (quotation marks omitted).  Petitioner sought the continuance to obtain evidence

10   related to the proper procedures for reporting inmate rules violations but, as the trial court

11   explained, such was not relevant to the issues faced by the jury—whether Petitioner knowingly

12   possessed the weapon.  Thus, the denial of the continuous did not have a substantial effect or

13   influence on the verdict.

14       Based on the foregoing, Petitioner has not carried his burden of proving the denial of a

15   continuance amounted to a due process violation or that any error had a substantial and injurious

16   effect of influence on the verdict such that ground one fails.  The undersigned recommends that

17   ground one be denied.

18       **C.    Grounds Three, Nine, and Ten – Evidentiary Issues**[6]

19       Although less than clear, Petitioner appears to challenge the admission and/or exclusion of

20   certain evidence in grounds three, nine, and ten.  Petitioner alleges the prosecution offered

21   evidence of a December 7, 2005 information that was false and he was not allowed to present

22   evidence from his previous cases to support his argument; the evidence related to his prior

23   convictions was improperly used to convict because "the priors were false;" and the record

24   relating to the priors was incomplete.  (Doc. No. 1 at 9, 18-20).

25       **1.  Background**

26       Despite initially refusing to bifurcate the trial based on a mistaken belief that Petitioner

27   _____

28   [6] Because Petitioner's grounds overlap and build upon each other, the undersigned addresses some
     grounds out of order for clarity and to avoid repetition.

1    intended to testify, the trial court ultimately bifurcated the trial to address Petitioner's guilt on the

2    underlying charge before addressing the sentencing enhancement based on his prior convictions.

3    (Doc. 17-6 at 97).  After the prosecution's case, Petitioner indicated he intended to call a witness

4    to testify regarding the "referral as sent into the DA," but the court explained that the contents of

5    the 115 and DA referral would be hearsay.  (*Id.* at 98-99).  Further, the court explained "the paper

6    procedure that occurs and then is referred to the District Attorney's office is not relevant, and it is

7    not admissible" for the purposes of trial.  (*Id.* at 100).  The court explained that if Petitioner had

8    "an issue with that procedure, that might be taken up with a 602."  (*Id.*).  The court also denied

9    Petitioner's request to call one of his former counsels to testify regarding whether it was

10   established at the preliminary hearing that Petitioner had possession of the weapon "[o]r if there

11   was some sort of malicious prosecution."  (*Id.* at 100-01).  Petitioner did not present any other

12   evidence during the guilt phase of the trial.  (*Id.* at 108).

13            While the jury was deliberating, the court held an identity hearing outside the presence of

14   the jury, during which the prosecution offered Exhibit 5, pursuant to California Penal Code §

15   969b,[7] containing certified copies of (1) Petitioner's CDC movement log; (2) abstracts of

16   judgments reflecting Petitioner's convictions and sentences in Case Nos. GA063048-01,

17   GA066813-01, and 08CF1095; and (4) Petitioner's fingerprints, photo, and identifying

18   information.  (Doc. No. 17-6 at 175; Doc. No. 17-3 at 9-37).  The court admitted Exhibit 5

19   without objection from Petitioner.  (Doc. No. 17-6 at 176).

20            Davis then attempted to offer Exhibits 6, 7, and 8 as evidence.  (Doc. No. 17-6 at 179,

21   184).  Exhibit 6 was a minute order from Case Number 07CF3535, indicating the case was

22   dismissed at the prosecution's request with the intention that it would be refiled.  (Doc. No. 17-1

23   at 166-67).  Exhibit 7 was a case summary from the same previous case.  (*Id.* at 168-73).  Exhibit

24   8 was a minute order from Petitioner's arraignment in the refiled case, Case Number 08CF1095.

25   (*Id.* at  174-176).  The court found the documents were not relevant and lacked the proper

26

27   [7] California Penal Code § 969b provides that certified copies of "the records of any state penitentiary,
     reformatory, county jail, city jail, or federal penitentiary" may be introduced as evidence to support that a
28   defendant has previously been convicted of and served a prison term for commission of a crime.

1  foundation because they were not certified copies, there was no testimony establishing their

2  authenticity, and they had nothing to do with identity.  (Doc. No. 17-6 at 185).  Petitioner

3  indicated he could prove the documents were authentic and certified if allowed to "get the rest of

4  the copies," but the court denied his request.  (*Id.* at 186).

5        Petitioner also sought to offer Exhibit 9, which the trial court described as including 17

6  pages consisting of "a motion entitled motion for priors, or for prior hearing pursuant to CCP

7  Section 1025;" an incomplete rap sheet; and two abstracts duplicative of those in the 969b packet

8  submitted by the prosecution.  (Doc. 17-6 at 201; Doc. 17-7 at 9; Doc. No. 17-1 at 177-218).  The

9  court sustained the prosecution's objections, concluding that most of the documents were

10  inadmissible hearsay, the motion was irrelevant, and  and the documents were likely to confuse

11  and mislead the jury.  (Doc. 17-7 at 9).  Petitioner then offered Exhibit 10, containing handwritten

12  pages of questions relating to the priors and miscellaneous documents from Petitioner's previous

13  cases.  (*Id.* at 17-7 at 9-10; Doc. No. 17-1 at 219-277; Doc. No. 17-2 at 2-64).  The court denied

14  admission based on the same ruling as to Exhibit 9.  (Doc. No. 17-7 at 10).  Ultimately, Exhibit 5

15  was the only additional evidence offered at the bifurcated portion of the trial.  (*See* Doc. No. 17-6

16  at 193; Doc. No. 17-7 at 14).

17      **2.  Analysis**

18        Generally, federal habeas relief is not warranted based only on alleged errors in state law,

19  including errors in interpreting and applying the state evidentiary rules.  *Estelle v. McGuire*, 502

20  U.S. 62, 67-68, 72 (1991); *see Walden v. Shinn*, 990 F.3d 1183, 1205 (9th Cir. 2021) ("we cannot

21  grant federal habeas relief founded on an alleged non-constitutional state evidentiary error").

22  However, when "evidence is introduced that is so unduly prejudicial that it renders the trial

23  fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a

24  mechanism for relief."  *Andrew v. White*, 145 S.Ct. 75, 78 (2025) (quoting *Payne v. Tennessee*,

25  501 U.S. 808, 825 (1991)).  To obtain relief on an evidentiary ruling, the petitioner must show

26  that the error was of a constitutional dimension and that it was not harmless.  *Brecht v.*

27  *Abrahamson*, 507 U.S. 619 (1993).  This requires the error to have had "'a substantial and

28  injurious effect' on the verdict."  *Id.* at 623.

1    Additionally, "[t]he Constitution guarantees criminal defendants a meaningful opportunity

2    to present a complete defense," but the United States Supreme Court has "also recognized that

3    state and federal rulemakers have broad latitude under the Constitution to establish rules

4    excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013)

5    (quotation marks and citations omitted). Thus, "a trial court may, consistent with the

6    Constitution, exclude defense evidence through the proper application of evidentiary rules that

7    serve a valid purpose in a given case, including when proposed evidence is only marginally

8    relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Bradford v.*

9    *Paramo*, 100 F.4th 1088, 1099 (9th Cir. 2024). Even if the exclusion of evidence amounted to

10   constitutional error, Petitioner is not entitled to relief unless he meets the "substantial and

11   injurious effect" standard set out in *Brecht*. *Id.* at 1103. Thus, for either Petitioner's challenge to

12   the admission of the prosecution's evidence or his challenge to the exclusion of his own evidence,

13   Petitioner must show the decision had a substantial and injurious effect on the verdict.

14        Here, even if the Court were to assume, without deciding, that the trial court erred in its

15   evidentiary rulings, Petitioner cannot satisfy *Brecht*. As to the guilt portion of the trial, Petitioner

16   was charged with violating California Penal Code § 4502(a), which prohibits possession of a

17   sharp instrument by anyone "at or confined in any penal institution." As the trial court ruled in

18   rejecting Petitioner's attempt to offer evidence related to the 115 and DA referral, whether the

19   proper procedures were followed in reporting the weapon was simply irrelevant to whether

20   Petitioner was in possession of a sharp instrument. To the extent Petitioner attempts to argue in

21   his Petition that his underlying convictions were not valid such that he was not "legally

22   confined," California Penal Code § 4504(a) provides that a person is deemed confined in a state

23   prison so long as they are confined "by order made pursuant to law … regardless of the validity

24   of the order directing the confinement, until a judgment of a competent court setting aside the

25   order becomes final." Accordingly, evidence related to the validity of his other convictions was

26   not relevant to whether he violated § 4502(a).

27        Turning to the enhancement portion of the trial, the issue before the jury was whether

28   Petitioner had previously been convicted of serious or violent crimes within the meaning of

13

1    California Penal Code §§ 1170.12(a) through (d) and 667(b) through (i) and whether he had

2    served previous prison terms within the meaning of Penal Code § 667.5(b).  Petitioner's prior

3    convictions for oral copulation by force or injury and assault with a deadly weapon in Case No.

4    08CF1095 are both considered serious felonies under California Penal Code § 1192.7(c)(5) and

5    (31), rendering them serious felonies for the purpose of Penal Code § 667.  *See* Cal. Penal Code §

6    667(d) (defining "a prior conviction of a serious or violent felony" as, of relevance, "an offense

7    defined in subdivision (c) of Section 1192.7 as a serious felony").  Similarly, at the time of

8    Petitioner's conviction and sentencing in 2016, Penal Code § 667.5(b) applied a sentencing

9    enhancement of one-year "for each prior separate prison term or county jail term imposed" for a

10   felony conviction.  Petitioner's convictions in Case Numbers GA063048 and GA066813 were

11   both felony convictions for which prison terms were imposed. (Doc. No. 17-3 at 14-16).  There is

12   no indication the exhibits Petitioner sought to admit—which in no way establish that the

13   underlying convictions had been overturned or were facially invalid—would have had any impact

14   on the jury's enhancement[8] findings.

15        Thus, Petitioner has not carried his burden of proving that any errors in the trial court's

16   evidentiary rulings had a substantial and injurious effect of influence on the verdict.  Accordingly,

17   the undersigned recommends that grounds three, nine, and ten be denied.

18        **D.    Ground Two – Judicial Bias**

19        In his second ground, Petitioner asserts the trial court's refusal to allow him to present

20   evidence related to his prior convictions was the result of judicial bias and vindictiveness.  (Doc.

21   No. 1 at 8).

22        There is no dispute that "[d]ue process guarantees a criminal defendant the right to a fair

23   and impartial judge."  *Marks v. Davis*, 106 F.4th 941, 988 (9th Cir. 2024).  However, "[i]n

24   determining whether there was a denial of due process, the courts do not look only to whether the

---

[8] To the extent Petitioner is attempting to attack the sentencing enhancement by asking this Court to review his previous convictions, such is not proper on federal habeas review.  *Lackawanna Cnty. Dist. Attys. v. Cross*, 532 U.S. 394, 402 (2001) (holding "that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid").

14

1    trial court committed misconduct, but to whether the court's actions rendered the trial so

2    fundamentally unfair as to violate federal due process under the United States Constitution."

3    *Brown v. Madden*, 858 F. App'x 242, 243 (9th Cir. 2021) (quoting *Duckett v. Godinez*, 67 F.3d

4    734, 740 (9th Cir. 1995)).

5         Here, there is nothing to indicate the trial judge's ruling was in any way based on judicial

6    bias.  Further, as discussed above with respect to the evidentiary rulings, Petitioner cannot show

7    that the exclusion of evidence impacted the jury's verdict because the evidence was irrelevant to

8    the issues before the jury.  Thus, even if the judge acted improperly in excluding the evidence,

9    such did not render the trial fundamentally unfair.  Accordingly, ground two is meritless and the

10   undersigned recommends that ground two be denied.

11        **E.       Ground Four – Confrontation Clause**

12        In his fourth ground, Petitioner alleges that the failure to identify the inmate who alerted

13   officers to the weapon in Petitioner's cell violated his right to confront the witnesses against him.

14   (Doc. No. 1 at 11).

15        The Sixth Amendment grants a criminal defendant the right "to be confronted with the

16   witnesses against him."  U.S. Const. amend. VI.  Thus, "a witness's testimony against a defendant

17   is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant

18   had a prior opportunity for cross-examination."  *United States v. Latu*, 46 F.4th 1175, 1180 (9th

19   Cir. 2022) (alterations omitted).  "But only statements whose primary purpose was *testimonial*

20   trigger the constitutional requirement. Testimonial statements resemble a solemn declaration or

21   affirmation made for the purpose of establishing or proving some fact."  *Id.* (cleaned up).

22        Here, Petitioner does not identify *any* statements by the unidentified inmate that were

23   admitted at trial let alone establish that any statements were testimonial.  *See Jones v. Gomez*, 66

24   F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations made with no reference to the record or

25   any document does not merit habeas relief).  Further, the Court's review of the record reveals

26   references to Officer Huewe receiving information that Petitioner had a weapon and Huewe's

27   testimony that he "received information that there was a weapon in the cell" from "other inmates

28

15

1  that reside in the building" who reported Petitioner "had the weapon at release for chow."  Doc.

2  No. 17-6 at 26, 41, 45, 48, 55-56).  However, no statements from any inmate were admitted.

3      Because Petitioner wholly failed to identify any testimonial statements that were

4  improperly admitted, he has not established a violation of his confrontation rights.  Thus, ground

5  four is without merit and the undersigned recommends that ground four be denied.

6          **F.      Ground Five – Denial of Motions**

7      In his fifth ground, Petitioner alleges he was denied "the right to have motions presented

8  heard and decided."  (Doc. No. 1 at 13).  Petitioner alleges "[m]otions presented to the court of

9  Johnsons letter castro motion to introduce additional jury instruction[,] a motion to exclude

10  evidence and judicial notice motion to review and weigh CDC rules application and compliance

11  were denied before they were heard [and] no explanation [was] given on or off the record."  (*Id.*).

12      For background, on the first day of trial, Petitioner indicated to the court that he had

13  "some motions."  (Doc. 17-5 at 132).  He indicated he had a motion to dismiss the priors and a

14  "Castro motion" to dismiss the jury instruction and give his own jury instruction.  (*Id.* at 133).

15  The court indicated that any motion related to the jury instructions was premature and asked

16  Petitioner for his objection to priors.  (*Id.*at 133-34).  Petitioner responded: "Basically these priors

17  are not priors. The information will be prejudicial. It has no current basis with the charge."  (*Id.* at

18  134).  Petitioner also indicated he wanted "to put in a motion for Johnson's letter. Basically to

19  introduce exculpatory or mitigating evidence, otherwise mitigating evidence," to which the court

20  responded, "I have no idea what you're talking about, sir."  (*Id.* at 135).  In further discussion,

21  Petitioner clarified that his argument was that the priors were not valid convictions, and he could

22  prove such if given the opportunity to present evidence in a bifurcated trial.  (*Id.* at 136).  In

23  ruling on the motions, the court explained that while Petitioner alleged the priors were not valid

24  convictions, "the underlying circumstances of the offenses [were] not relevant, only the fact that

25  [he was] convicted."  (*Id.* at 138).  The court also denied Petitioner's motion to exclude any

26  witness who did not have "direct visual confirmation of a find of possession," his motion to

27  exclude any correctional officer who did not have an official obligation to be at the trial, and his

28  motion to exclude the weapon and photographs of the weapon.  (*Id.* at 139-43).

1    Despite challenging the trial court's failure to explain the denial of his motions, Petitioner

2    fails to cite any Supreme Court precedent establishing a right to such explanation.  Further, even

3    if the failure to provide an explanation on the record amounted to a constitutional violation—

4    which, again, Petitioner fails to establish—Petitioner presents no argument as to how an

5    *explanation* of the trial court's ruling would have altered the jury's *verdict*.  Thus, Petitioner has

6    not shown that any error had a "substantial and injurious effect or influence" on the verdict.

7    *Brecht*, 507 U.S. at 637.  Based on this failure, Petitioner has not shown that habeas relief is

8    warranted and the undersigned recommends that ground five be denied.

9    **G.    Ground Six – Batson Challenge**

10    In his sixth ground, Petitioner alleges the prosecution's use of a peremptory challenge to

11    strike "[a] black female prospective juror" who "expressed similar ideals and understandings as

12    other jurors who were not excluded" violated *Batson v. Kentucky*, 476 U.S. 79 (1986).  (Doc. 1 at

13    14).  However, Petitioner wholly fails to identify the specific juror he is referring to or other facts

14    to support that the prosecution's use of a peremptory challenge was improper.

15    In *Batson*, "the Supreme Court held that 'the Equal Protection Clause forbids the

16    prosecutor to challenge potential jurors solely on account of their race or on the assumption that

17    black jurors as a group will be unable impartially to consider the State's case against a black

18    defendant.'"  *Haney v. Adams*, 641 F.3d 1168, 1169 (9th Cir. 2011) (quoting *Batson*, 476 U.S. at

19    89).  However, "a petitioner may not raise a *Batson* claim in his habeas petition if the petitioner

20    failed to object to the prosecution's use of peremptory challenges at trial."  *Id.*  Here, Petitioner

21    failed to object to *any* of the prosecution's peremptory challenges on *any* grounds.  (*See* Doc. No.

22    17-8 at 119-21, 166-70, 207-10, 218).  Because "a timely objection to the prosecutor's use of

23    peremptory challenges is a prerequisite to a *Batson* challenge," Petitioner is not entitled to federal

24    habeas relief.  *Haney*, 641 F.3d at 1173.

25    Accordingly, the undersigned recommends ground six be denied.

26    **H.    Ground Seven – Public Trial**

27    In ground seven, Petitioner alleges he was denied his right to a public trial when "[t]rial

28    was held in a closed courtroom 10.12.16 and 10.13.16 and there after verdict" and reopened at

17

1   bifurcation.  (Doc. No. 1 at 15).  As with many of his claims, Petitioner fails to support his

2   argument with citations to the record or any substantive argument.

3       The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the

4   accused shall enjoy the right to a speedy and public trial."  Here, however, there is no factual

5   support for Petitioner's assertion that he was denied a public trial.  As an initial matter, although

6   Petitioner references October 12 and 13, 2016 in his Petition, review of the transcript reveals no

7   proceedings occurred on those dates.  (*See* Doc. 17-7 at 43 (jury trial concluded on September 14,

8   2016); *id.* at 50 (initial sentencing hearing on October 18, 2016)).  The Court presumes Petitioner

9   intended to reference September 12 and 13, 2016, given trial was in progress on those dates.

10  Nothing in the transcript indicates that the courtroom was closed at any time on either of those

11  dates.  (*See* Doc. No. 17-5 at 125-155; Doc. No. 17-6).  As Respondent indicates in his answer,

12  certain proceedings—specifically voir dire and opening statements—were transcribed separately,

13  but there is no indication the courtroom was closed during these proceedings.  (*See* Doc. Nos. 17-

14  8, 17-9).

15      Because the court remained open throughout the proceedings, Petitioner was not denied

16  his right to a public trial.  The undersigned recommends that ground seven be denied.

17      **I.      Ground Eight – Ineffective Assistance of Counsel**

18      In ground eight, Petitioner alleges he received ineffective assistance of counsel prior to

19  trial because both of his appointed counsel failed to investigate the case or prison prior history.

20  (Doc. No. 1 at 17).

21      Claims alleging that counsel was constitutionally ineffective require the Court to

22  engage in the two-step analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

23  Under the first prong of that test, the petitioner must prove that his attorney's representation

24  fell below an objective standard of reasonableness.  *Id*. at 687-88.  To demonstrate deficient

25  performance, the petitioner must show his counsel "made errors so serious that counsel was

26  not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at

27  687; *Williams v. Taylor*, 529 U.S. 362, 391 (2000).  In reviewing trial counsel's performance,

28  however, "counsel is strongly presumed to have rendered adequate assistance and made all

1    significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466

2    U.S. at 690; *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  Only if counsel's acts and

3    omissions, examined within the context of all the circumstances, were outside the "wide

4    range" of professionally competent assistance, will petitioner meet this initial burden.

5    *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986); *Strickland*, 466 U.S. at 689-90.

6        Under the second part of *Strickland's* two-prong test, the petitioner must show that he

7    was prejudiced by counsel's conduct.  466 U.S. at 694.  Prejudice is found where there is a

8    reasonable probability that, but for his counsel's errors, the result would have been different.

9    *Id*.  The errors must not merely undermine confidence in the outcome of the trial but must

10   result in a proceeding that was fundamentally unfair.  *Williams*, 529 U.S. at 393 n.17;

11   *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  The petitioner must prove both prongs:

12   deficient performance and prejudice.  A court need not, however, determine whether

13   counsel's performance was deficient before determining whether the petitioner suffered

14   prejudice as the result of the alleged deficiencies.  *Strickland*, 466 U.S. at 697 ("If it is easier

15   to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

16   expect will often be so, that course should be followed.").

17       It is well-established that defense counsel has a "duty to make reasonable investigations or

18   to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466

19   U.S. at 691.  However, "the duty to investigate and prepare a defense is not limitless."  *Hendricks*

20   *v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995).  A court must "conduct an objective review of

21   the attorney's performance, measured for 'reasonableness under prevailing professional norms.'"

22   *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 668).  This includes

23   a "context-dependent consideration of the challenged conduct as seen 'from counsel's perspective

24   at the time.'"  *Id.*  Furthermore, "ineffective assistance claims based on a duty to investigate must

25   be considered in light of the strength of the government's case."  *Eggleston v. United States*, 798

26   F.2d 374, 376 (9th Cir. 1986).

27       Based on the other grounds raised in the Petition, it appears Petitioner is arguing his

28   appointed counsel should have investigated and challenged the underlying facts and validity of

his prior convictions supporting the sentencing enhancement. The California Supreme Court has recognized that where "the mere fact that a prior conviction occurred under a specified statute does not prove the serious felony allegation, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue." *People v. Delgado*, 43 Cal. 4th 1059, 1065 (2008). However, as already discussed in relation to Petitioner's evidentiary challenges, such a situation was not presented here because Petitioner's prior convictions for oral copulation by force or injury and assault with a deadly weapon both fall within the statutory definition of a serious felony under California Penal Code § 667(d). Thus, the facts underlying Petitioner's prior convictions were irrelevant in this case and there is no support for Petitioner's argument that counsel was ineffective for failing to investigate his prior convictions.

Further, Petitioner cannot show that he was prejudiced by any alleged errors in counsels' failure to investigate. The prosecution submitted certified copies of Petitioner's previous convictions, which were sufficient to support the sentencing enhancement. There is nothing before the Court to suggest that had counsel investigated the prior convictions further, the result of Petitioner's trial would have been different as required to show prejudice. *Strickland*, 466 U.S. at 694.

Based on the foregoing, Petitioner has not carried his burden of proving deficient performance or prejudice, and his claim for ineffective assistance of counsel necessarily fails. The undersigned recommends that ground eight be denied.

## V. CERTIFICATE OF APPEALABIILTY

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of

his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because Petitioner has not made a substantial showing of the denial of a constitutional right, the undersigned recommends that the court decline to issue a certificate of appealability.

Accordingly, it is **RECOMMENDED**:

1. Petitioner be DENIED all relief on his Petition for Writ of Habeas Corpus (Doc. No. 1); and

2. Petitioner be denied a certificate of appealability.

### NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:   __May 19, 2025__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

21